IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA AUDIT,

      Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

      Defendants.

Case No.: 1:25-cv-13562

Judge Robert W. Gettleman

Magistrate Judge Jeffrey T. Gilbert

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S
*RENEWED* MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT
AGAINST THE DEFENDANTS IDENTIFIED IN FIRST AMENDED SCHEDULE A**

Plaintiff, LISA AUDIT ("Audit" or "Plaintiff"), submits the following memorandum in support of Plaintiff's Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Defendants identified in First Amended Schedule A (collectively, the "Defaulting Defendants") based on Plaintiff's action for Copyright Infringement (Count I). Excluded from this motion are defendants that have settled with Plaintiff.

Plaintiff is the owner of the Copyright Registration that protects the creative content of the Lisa Audit Work. Complaint [1] at ¶ 8. Audit is a contemporary artist whose artworks feature landscapes and floral themes in a variety of mediums including oil paints, acrylics, and pen and ink. *Id.* Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Lisa Audit Work. *Id.* at ¶ 9. Thus, the Lisa Audit Products and Work are widely recognized and exclusively associated by consumers, the public, and the trade as being associated with and authorized by Plaintiff. *Id.*

The success of the Lisa Audit Work is due in large part to Plaintiff's marketing, promotional, and distribution efforts. *Id.* at ¶ 13. As a result of Plaintiff's efforts, the quality of Plaintiff's Lisa Audit Products, the promotional efforts for Plaintiff's products and designs, press and media coverage, and social media coverage, members of the public have become familiar with the Lisa Audit Work and associate it exclusively with Plaintiff. *Id.* at ¶ 14. No one other than Plaintiff and Plaintiff's licensees are authorized to manufacture, import, export, advertise, create derivative works, offer for sale, or sell any goods utilizing the Lisa Audit Work without the express written permission of Plaintiff. *Id.* at ¶ 15.

On information and belief, the Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff products, while selling imitations of Plaintiff's products. *See id.* at ¶ 11. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. *Id.* at ¶ 7. Defaulting Defendants conduct business throughout the United States, including within the State of Illinois and this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant online marketplace accounts (collectively, the "Defendant Internet Stores") identified in First Amended Schedule A. *Id.* at ¶¶ 2, 16. Each Defaulting Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Infringing Lisa Audit Products to consumers within the United States, including the State of Illinois. *Id.*

Plaintiff filed this action on November 5, 2025, alleging Copyright Infringement and seeking statutory damages and injunctive relief. [1]. This Court granted Plaintiff's *Ex Parte* Motion

for Leave to Conduct Expedited Discovery and Service of Process by E-mail and Electronic Publication (the "Order") on December 7, 2025 [20]. Paragraph 3 of the Order [20] permitted Plaintiff to complete service of process to Defendants by electronic publication and by sending an e-mail to any e-mail addresses provided for Defendants by third parties. The Defendants identified in First Amended Schedule A that are associated with Temu, LLC ("Temu") accounts were properly served on December 15, 2025. [23]. None of the Defaulting Defendants has entered an appearance or otherwise defended this action. *See* Declaration of Keith A. Vogt (the "Vogt Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on Count I of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). The Court denied Plaintiff's prior motion for default judgment without prejudice and granted leave to refile. [49]. Plaintiff now renews that motion; as shown in Section II below and in the accompanying Declaration of Yanling Jiang and Exhibits A and B, service is proper as to each defaulting Defendant. Plaintiff further seeks an award of statutory damages as authorized by 17 U.S.C. §504(c)(2) for willful copyright infringement. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing Products, and that all assets in Defaulting Defendants' financial accounts operated by Temu, as well as any newly discovered assets, be transferred to Plaintiff.

## ARGUMENT

### I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)–(b),

and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this judicial district. *See* [1] at ¶ 2; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive commercial internet websites and online marketplace accounts operating under the Defendant Internet Stores, each of the Defaulting Defendants has targeted sales from Illinois residents by operating websites and/or online marketplace accounts that offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold products bearing infringing versions of Plaintiff's federally registered copyright to residents of Illinois. [1] at ¶ 2. As such, personal jurisdiction is proper since each of the Defaulting Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois. *See, e.g., NBA Properties, Inc. v. HANWJH*, No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. Aug. 16, 2022) (concluding that personal jurisdiction is proper when a defendant purposefully directs its actions to Illinois via third-party online retailers); *see also, e.g., Emily Holmes v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12259 (N.D. Ill. Dec. 11, 2025).

## II.    SERVICE OF PROCESS IS PROPER AS TO EACH DEFAULTING DEFENDANT UNDER *KANGOL*

The Seventh Circuit recently confirmed that the Hague Convention prohibits email service in China where the Convention applies, but that a district court must first determine whether the

Convention applies at all. *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, 177 F.4th 793, 795–96 (7th Cir. 2026). The Convention does not apply "where the address of the person to be served with the document is not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, 362. The standard this District applies requires "reasonably diligent efforts to ascertain and verify [the] defendant's mailing address," and is conjunctive: a plaintiff must not only ascertain a listed address but verify it, for "[b]are assertions regarding the reliability of [a] [d]efendant's publicly available address are not a substitute for actual diligence." *NBA Props., Inc. v. Partnerships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021). Where a plaintiff investigates the platform-disclosed address and cannot confirm it as a real, usable location connected to the defendant, the address is "not known" within Article 1. *Cf. Zuru (Singapore) Pte., Ltd. v. Individuals Identified on Schedule A Hereto*, No. 22 Civ. 2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022).

Article 1 also turns on the identity of the party to be served. Under PRC law, only a defendant's registered Chinese-character legal name, or the registered Chinese-character name of the natural person to be served, has legal status for a Central Authority request; a romanized or English-translated platform trade name is not the defendant's legal identity, and a Request naming a defendant only in that form is, as Aaron Lukken explains, "assured of failure" because the executing local intermediate people's court cannot reconcile a romanized identifier to a registered entity in the SAMR registry.[1]

For each defaulting Defendant, Plaintiff's investigation comprised, to the extent the platform stated an address: (a) cataloging any platform-disclosed address on Schedule A; (b)

---

[1] Aaron Lukken, *Chinese Company Names, Flawed Addresses, and the High Likelihood of Hague Service Failure*, Hague Law Blog (Mar. 2024), https://www.haguelawblog.com/2024/03/chinese-company-names-flawed-addresses-and-the-high-likelihood-of-hague-service-failure/; *see also* Aaron Lukken, *A Hague-compliant roadmap for service on "Schedule A" defendants*, Hague Law Blog (July 2024).

5

searching any stated address on five independent, publicly available resources — a Google web search, a Baidu web search, Google Maps, Baidu Maps (百度地图), and Amap (高德地图) — and capturing a screenshot of each; (c) checking the seller against the Tianyancha (天眼查) PRC business-registry database; and (d) decomposing each platform identifier against the four required SAMR name elements (行政区划, 字号, 行业表述, 组织形式). Jiang Decl. ¶¶ 3–8; Exs. A, B. For the sixteen Defendants with a stated address, the map verification rests on Baidu Maps (百度地图), China's dominant mapping platform, cross-checked against Amap (高德地图), a Baidu web search, and Google web and Google Maps; the remaining seventy-six Defendants had no stated address to search. Jiang Decl. ¶¶ 3–5.

The addresses for all of the Defaulting Defendants are not known. For the eighty-nine mainland-China Defendants, each identified by Schedule number in Exhibits A and B, Plaintiff's investigation confirmed that the address is not known base on two independent grounds. First, the platform record supplies no registered Chinese-character legal name in the four-element SAMR structure. Instead, each identifier is a romanized pinyin string, an arbitrary or English-fabricated storefront alias, or a partial trade name lacking the required components, and for many Defendants the seller information was no longer available at all. Therefore, a Central Authority request naming any of them in its platform form is the pattern practitioner authority identifies as "assured of failure." Jiang Decl. ¶¶ 5–7; Ex. A. Second, and independently, each platform-disclosed address failed verification after reasonably diligent efforts, in recurring patterns documented in the exhibits: addresses that could not be located at all; addresses resolving no lower than a broad district, township, village, or residential community rather than the stated street and unit; a specific house, unit, room, workstation (工位), or stall that the map data confirms does not exist; a landmark- or development-relative reference whose anchor is absent or resolves to a different,

6

unrelated establishment; and "office-only" (仅限办公) or virtual cluster-registration cells that do not identify the Defendant's own premises. Jiang Decl. ¶¶ 5–7; Exs. A, B. Each address was thus ascertained but could not be verified to a serviceable, defendant-connected location, and is "not known" within Article 1. *NBA Props.*, 549 F. Supp. 3d at 796; *Zuru*, 2022 WL 14872617, at *2.

The three Defendants whose platform-disclosed address is in Hong Kong (Nos. 9, 74, and 108) lie outside the PRC SAMR/Tianyancha system, so that framework does not apply to them. Regardless, each of these addresses are also not known from the map investigation. Because those addresses contain no Chinese characters and do not resolve on Baidu Maps or Amap (which do not cover Hong Kong), Plaintiff searched them on Google Maps. The stated address for No. 9 could not be located at all, and the record reflects that multiple unrelated businesses share the same base address with rotating unit suffixes; the stated addresses for Nos. 74 and 108 resolved only to a multi-tenant commercial building, not to the stated room or floor. For Defendant No. 108 in particular, the address resolved only as a partial match to a building of a slightly different name. None verified as premises connected to the Defendant, so each Hong Kong address is "not known" within Article 1. Jiang Decl. ¶ 5(b); Ex. A. Either ground independently supports email service under Rule 4(f)(3).

Because the address of each of the ninety-two Defaulting Defendants is not known, the Hague Convention does not apply, and this Court's prior Order authorizing service by e-mail and electronic service ([20]) supplied proper service. Plaintiff has therefore satisfied *Kangol* as to every defaulting Defendant, and default judgment is appropriate.

## III.    PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

On November 5, 2025, Plaintiff filed the Complaint [1] alleging Copyright Infringement (Count I). The Defendants were properly served on December 15, 2025. [23]. Despite having been served with process, the Defaulting Defendants have ignored these proceedings and failed to plead or otherwise defend this action. Vogt Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Plaintiff asks for entry of default against the Defaulting Defendants.

## IV. PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

At least twenty-one (21) days have passed since Defendants were served, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants identified in First Amended Schedule A. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate.

### A. Copyright Infringement

To properly plead a claim of copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir.

2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Here, Plaintiff owns the registered copyright in the Lisa Audit Work. [1] at ¶¶ 3, 10. Plaintiff alleged in the Complaint that Plaintiff's Lisa Audit Work has been infringed. *Id*. at ¶¶ 17-22. Since the Defaulting Defendants have failed to respond or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiff's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff requests entry of judgment with respect to Count I for willful copyright infringement against the Defaulting Defendants.

### B. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c)(1), a plaintiff in a case involving the use of a copyright infringement may elect to receive "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the copyright infringement is found to be willful, 17 U.S.C. § 504(c)(2) provides for statutory damages "to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Further, in the Seventh Circuit, infringing conduct is willful where the defendant knows that his conduct constitutes infringement or where he shows reckless disregard of the copyright owner's rights. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994). As such, knowledge need not be proven directly, but can be inferred from a

defendant's conduct. *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003) (Finding that "[w]illful blindness is knowledge, in copyright law").

Here, Defendants had knowledge that their activities constituted infringement or at least a reckless disregard of Plaintiff's rights in the Lisa Audit Work because Defendants are intentionally coupling the Infringing Lisa Audit Products with goods derived from the image in Plaintiff's copyrighted work. Thus, Plaintiff's request for a statutory damages award of one hundred thousand dollars ($100,000) per Defaulting Defendant for willful copyright infringement of the Lisa Audit Work is appropriate. *See, e.g., Emily Holmes v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12259 (N.D. Ill. Dec. 11, 2025).

A significant consideration should be whether infringing sales were made over the internet, the rationale being that sales over the internet increases the amount of an award because use of the internet made the infringement widely available. A finding of willful infringement is warranted along with an award of one hundred thousand dollars ($100,000) in statutory damages. *See, e.g., Emily Holmes v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 25-cv-12259 (N.D. Ill. Dec. 11, 2025).

### C.  Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's Lisa Audit Work. In this District, the "standard for a permanent injunction is essentially the same as for a preliminary injunction except that in seeking a permanent injunction, [Plaintiff] must prove actual success on the merits rather than likelihood of success on the merits." *Hicks v. Peters*, 10 F. Supp. 2d 1003, 1004 (N.D. Ill. 1998); *See Plummer v. American Institute of Certified Public Accounts,* 97 F.3d 220, 229 (7th Cir. 1996) ("Thus, when the plaintiff is seeking a permanent

injunction, the first of the four traditional factors is slightly modified, for the issue is not whether the plaintiff has demonstrated a reasonable *likelihood* of success on the merits, but whether he has *in fact* succeeded on the merits.”). The remaining factors are (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id*. Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id*.

### 1. Plaintiff has Proved Actual Success on the Merits

As set forth above, Plaintiff owns the registered copyright for the Lisa Audit Work. Declaration of Lisa Audit (the “Audit Declaration”) at ¶ 5. The accused products use the protected work or are derived from the distinctive creative content found in the Lisa Audit Work. *See* [15-1]. As such, the infringement is clear and establishes that Plaintiff has proven actual success on the merits of this claim.

### 2. There is No Adequate Remedy at Law and Plaintiff will Suffer Irreparable Harm in the Absence of Permanent Relief

Irreparable injury “almost inevitably follows” when there is a high probability of confusion because such injury “may not be fully compensable in damages.” *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). “The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants’ goods.” *Int’l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988).

The harms caused by the copyright infringement of the Lisa Audit Work are equally insidious. The infringements deprive Plaintiff of the ability to control the creative content protected by the copyright, they devalue the Lisa Audit Work by associating it with inferior quality goods, and they undermine the value of the copyright by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to develop further artwork and markets for the existing work. Audit Declaration at ¶¶ 6-10. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum, Plaintiffs have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiff will suffer irreparable harm because of StreamCast's likely inability to pay for the past and/or future infringements that it has induced. Additionally, StreamCast's inducement has and will continue to irreparably harm Plaintiff's ability to enforce its exclusive rights."); *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) (recognizing that the perception of the ability to infringe copyright protected work undermines the ability to develop and conduct business). Plaintiff will suffer irreparable harm if a permanent injunction is not issued. *See* Audit Declaration at ¶ 11. Accordingly, Plaintiff has established that Plaintiff will be irreparably harmed by Defendants' infringing conduct.

### 3. The Balance of Hardships Tips in Plaintiff's Favor

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King*

*Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). This is equally true in the copyright context, since Defendants "cannot complain" of being forced to cease their infringement. *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Lisa Audit Products. Thus, the balance of equities tips decisively in Plaintiff's favor.

### 4. Issuance of the Injunction is in the Public Interest

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). This is especially true here since protecting the creative content of the Lisa Audit Work extends far beyond protecting the works of the individual artist. It also protects the integrity of Lisa Audit Products and encourages creative expression.

Moreover, federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). This is equally true in the copyright context. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions.

## V. CONCLUSION

Plaintiff respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of one hundred thousand dollars

13

($100,000) per Defaulting Defendant pursuant to 17 U.S.C. § 504(c)(2), and enter a permanent injunction order prohibiting Defaulting Defendants from selling Infringing Lisa Audit Products and transferring all assets in Defaulting Defendants' financial accounts operated by Temu to Plaintiff.

DATED: August 3, 2026                           Respectfully submitted,

                                                */s/ Keith A. Vogt*
                                                Keith A. Vogt
                                                FL Bar No. 1036084/IL Bar No. 6207971
                                                Keith A. Vogt PLLC
                                                1820 NE 163rd Street, Suite #306
                                                North Miami Beach, Florida 33162
                                                Telephone: 312-971-6752
                                                E-mail: keith@vogtip.com

                                                ***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2026, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to any e-mail addresses provided for Defendants by third parties that includes a link to said website.

/s/ *Keith A. Vogt*
Keith A. Vogt, Esq.